Filed 3/11/25  In re S.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.B. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E084768 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J298021 & J298022) |
| v. | OPINION |
| M.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Plaintiff and Respondent.

1

In this appeal, defendant and appellant M.B. (mother) contends plaintiff and respondent San Bernardino County Children and Family Services (CFS) and the juvenile court failed to satisfy the duty of initial inquiry regarding the *maternal* extended family members, as required by the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and Welfare and Institutions Code[1] section 224.2, subdivisions (a) and (b)(1). We disagree and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

*A. Referral, Petition, and Detention.*

Mother and Z.B. (father) are the parents of B.B. (born 2020) and S.B. (born 2023).[2] On July 28, 2023, CFS received a referral alleging S.B. tested positive for amphetamine at the time of birth. Mother admitted to using while pregnant, and she has a prior child welfare history regarding her substance abuse. CFS obtained a detention warrant, removed the children from parents' custody, and filed a petition alleging the children were at substantial risk of harm as described in section 300, subdivision (b)(1), mother and father have a history of substance abuse, and both knew or should have known of each other's substance abuse history.

At the detention hearing on August 4, 2023, the juvenile court made ICWA inquiries of mother, father, and paternal grandparents; all denied Indian ancestry. The paternal grandparents and great-grandmother filled out "RELATIVE: Family Finding and

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

[2] Mother's oldest child, R.S. (born 2016), is not a subject of this appeal.

ICWA Inquiry" (CFS 030) forms denying any Indian ancestry. The court found a prima face case for detention, ordered parents to complete the Judicial Council Forms, form ICWA-020, detained and removed the children from parents, and ordered supervised visitation.

B.  *Jurisdiction/Disposition Reports and Hearing.*

The jurisdiction/disposition report, filed August 21, 2023, notes the children were placed with the paternal grandmother and ICWA does not apply. The social worker spoke with both parents on August 1, and they denied Indian ancestry. The paternal grandmother indicated her father "might have Native American ancestry"; however, the paternal great-grandfather, along with the paternal great-grandmother, denied Native American ancestry. The report states CFS will continue to ask relatives.

At the contested hearing on October 24, 2023, county counsel stated, "ICWA does not apply at this time, and it is correct." The juvenile court acknowledged counsel's statement and found that ICWA does not apply as to B.B. and S.B. The court sustained the allegations that mother uses substances, including methamphetamines, that father knew or should have known of her use, and that her use affects her ability to care for the children, declared the children dependents of the court, maintained their placement with the paternal grandmother, and ordered family reunification services and supervised visitation.

3

*C. Six Month Review Report and Hearing.*

By April 2024, CFS recommended termination of reunification services and the setting of a section 366.26 hearing to establish a permanent plan of adoption with the children's relative caregivers. The status review report notes mother reported her support network includes the maternal aunts, maternal grandparents, and father's family. Mother denied having Indian ancestry on August 1 and 16, 2023, and February 7, 2024. Father, paternal grandmother, paternal great-grandparents, and paternal great-aunt all denied Indian ancestry. On April 24, the juvenile court granted county counsel's request and found that ICWA does not apply. At the contested six-month review hearing on June 11, 2024, the court terminated services and set a section 366.26 hearing.

*D. Section 366.26 Report and Hearing.*

In its section 366.26 report filed September 13, 2024, CFS maintained its prior recommendations. As of August 2024, mother and the paternal relatives continued to deny Indian ancestry. Additionally, the social worker asked the maternal grandparents (D.D. and P.B.) and brother-in-law (C.) on August 26 about Indian ancestry, but all denied having any. At the hearing on October 1, the juvenile court, again, found that ICWA does not apply, terminated all parental rights to B.B. and S.B. (over parents' objections), and selected adoption as the permanent plan.

## II. ANALYSIS

Mother argues CFS and the juvenile court failed to satisfy their duty of "initial inquiry" as to the children's *maternal* Native American ancestry, and in light of such

4

violation, the case should be conditionally reversed and remanded with instructions to conduct an appropriate investigation regarding Indian heritage. CFS argues that it satisfied its duty of inquiry because its investigation included the maternal grandparents who denied Indian ancestry, and there was no evidence to reasonably conclude the maternal aunts could assist CFS in its investigation of Indian ancestry. We agree with CFS.

"Fulfilling the notification duty requires sufficient inquiry into the child's Native heritage. 'The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child . . . [facing a dependency or delinquency proceeding] is or may be an Indian child.' [Citations.] California's statutory scheme imposes a duty of initial inquiry on both the department and the court. The department's duty arises when a report of abuse or neglect is made and/or when the county takes the child into its temporary custody. [Citation.] The inquiry 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' [Citation.] Then, on the first appearance upon a petition, 'the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' [Citations.]" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1099, fns. omitted.)

5

When conducting an inquiry investigation, the operative concept is to inquire of those people who are reasonably available to assist the department with its investigation into whether the child has any potential Indian ancestry. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140 (*Dezi C.*).) A reasonable inquiry and adequate ICWA investigation do not require an inquiry of every possible extended family in every case. (*Dezi C.* at p. 1140.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] '"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."'" (*Id.* at p. 1141.)

Here, mother faults CFS and the juvenile court for not requesting the maternal aunts' contact information to "conduct the required inquiry with these extended family members." However, there was no evidence to reasonably conclude the maternal aunts could assist CFS in its investigation of Indian ancestry since the *maternal grandparents* confirmed there was no maternal Native American family history. Moreover, no one provided any additional information concerning other maternal relatives, including the maternal aunts, who could offer further information on Indian ancestry. While mother identified the maternal aunts as part of her support network, there is no evidence to suggest they were reasonably available to CFS for inquiry or had information that would shed light on the children's potential Native heritage.

6

On this record, we conclude the ICWA inquiry was proper, adequate, and duly diligent under *Dezi C*. (*In re H.B.* (2023) 92 Cal.App.5th 711, 720 [inquiry "'has reliably answered the question at the heart of the ICWA inquiry:  Whether a child involved in a proceeding "is or may be an Indian child"'"].)  The juvenile court's findings that CFS's inquiry was adequate and proper were based on a well-developed record, which shows that its ICWA investigation included an extensive inquiry of the children's maternal and paternal relatives.  Both CFS and the court made inquiries of mother, the maternal grandparents, father, father's brother-in-law, the paternal grandparents, and the paternal great-grandparents.  At the conclusion of this investigation, neither the parents nor the extended family members provided any information that would give the juvenile court "reason to know" or even "reason to believe" the children were Indian children.  Accordingly, the court did not abuse its discretion in finding B.B. and S.B. were not Indian children as defined by ICWA and corresponding California law.  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

### III.  CONCLUSION

The order terminating parental rights to B.B. and S.B. is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

RAPHAEL
J.

7